I'm Jeff Kestenband. I represent the appellant, Asante Gaines. With the Court's permission, I reserve two minutes for rebuttal. The sentence in this case was substantively unreasonable because the District Court did not give sufficient consideration primarily to four factors. First, my client's disadvantaged upbringing and his overall character. Second, Mr. Gaines' role in the offense. Third, the fact that his criminal history score substantially over-represented the seriousness of his criminal conduct. And fourth, the disparity in the sentence Mr. Gaines received as compared to the sentences received by his co-defendants. The two factors that are the most important and which are also related are the role in the offense and the disparity in sentences, so I'll start the discussion there. The incident that preceded the event that was the primary focus of the indictment, the shooting outside the Bridgeport Courthouse, was the murder of Myreet Kenyon the day before. Myreet Kenyon was a friend of Mr. Gaines and the other people in Mr. Gaines' group. Initially, when Kenyon was murdered, the evidence showed that Mr. Gaines tried to be the voice of reason and tried to dissuade retaliation. There was evidence that showed that he was in contact with Kenyon's brother and said to him that he discouraged retaliation. He used words along the lines of, you'll have to pack your bags if there's retaliation, meaning if you retaliate, you'll end up going to prison. Over the next few hours, conversations among the group continued and somewhere along the lines, Mr. Gaines was essentially outvoted and a decision was made among the group to retaliate. So can I ask a question about the narrative that you're giving us now? Is that the only narrative that's supported by the record that we have in front of us or that the district court had in front of it? Well, the narrative, the evidence showed that Mr. Gaines was in contact with the victim's brother and did indisputably discourage retaliation. Right, but I gather the district court thought that your client played a more central role, not a reluctant going along with role, in the act of retaliation. And that was based on all of the various calls to all of the various people. I think the court saw him as not a reluctant follower, but an organizer of this retaliatory effort. Is there something in the record that compels us to sort of understand things the way that you're describing them? To be sure there was evidence in the record that demonstrated that Mr. Gaines was involved in the discussions that ultimately led to the courthouse shooting. We've never disputed that. And of course he pled guilty and he was sentenced accordingly. I bring up the point because at least initially, he was the only one who demonstrated a reluctance to retaliate. And along the way, there were discussions and the decision was changed to retaliate. One of the themes that we emphasize- When you say you expressed a reluctance to retaliate, I'm kind of wondering whether there's a distinction between encouraging the brother not to retaliate and saying I don't think anybody should retaliate. And I guess I'm- Well, the message of think about what you're going to do or you'll have to pack your bags I think would apply to everyone. Nobody wants to go to prison. And so his initial reaction in the heat of the moment immediately after the murder was to discourage retaliation. This was a group of multiple co-defendants. And the discussions that occurred do show that Mr. Gaines was involved in planning, but so was everyone else. And when we look at the actual shooting itself, it tends to demonstrate his role as a follower. I say that because one of the other defendants went into the courthouse essentially on a reconnaissance mission to see if the victims of the courthouse shooting were present in court, not Mr. Gaines. There were also two cars involved, one of which the shooters occupied and the other was essentially a lookout vehicle. It was a minivan- Which Mr. Gaines was in. He was in the minivan that was a lookout vehicle. Because he had a GPS tracker on him. He was already under supervision for other crimes that he committed, correct? That's true, yes.  And of course it would have been – and it ended up being very easy to track his location outside the courthouse. But in terms of his role, he wasn't a shooter. He wasn't a driver of either car. He was in the vehicle that was the lookout vehicle. My understanding is that he somehow managed to be along for the ride, is that it? Well, he certainly was guilty of the crime. He planned it. He helped to plan it. He went along with it. He conspired. He doesn't challenge the legitimacy of his plea or the voluntariness of it? Correct. Only the sentence. And as the court knows, we asked for a sentence of 150 months. The district court imposed a sentence of 190 months. And the range was 360 to life. Yes, it was definitely much higher. And that relates, I think, to some degree to the criminal history. But before getting to the criminal history –  I mean, he had a substantial record. Well, by – A, he's under supervision at the time he commits the crime. B, he's got a substantial record. How does his record stack up with regard to some of the other people? He had a higher criminal history score. But when you look at the conduct that led to that score, it was actually much less significant. Is this an abusive – is this substantively or procedurally abusive? Substantively. Okay, so it's an abusive discretion standard. It is an abusive discretion standard. To pick up on that point, Your Honor – The shooting occurred at a courthouse? Outside the courthouse, as people were exiting the courthouse. In terms of the abusive discretion standard, this Court has said in Radovalli that, of course, sentences are not to be rubber-stamped, that obviously the District Court has a tremendous amount of discretion.  But this Court is here to review those sentences. I can appreciate that. But this Court also, I mean, it addressed his difficult childhood. It addressed that he wasn't a shooter. I guess I'm not seeing what you're asking us to do other than re-weigh the factors that the Court already considered. Right. You're right, Judge Park. We're not raising a procedural unreasonableness claim. We acknowledge that the District Court considered the arguments, but the Court didn't give sufficient weight. And to pick up on an area that we just discussed in terms of criminal history, while his score put him in Category 6, nine of those points which put him in Category 5 by themselves involved a misdemeanor conviction for interfering with police, a violation of probation, a failure to appear, a failure to register with the Deadly Weapons Registry, which is kind of an obscure thing. I wasn't even aware of it until I saw it in Mr. Gaines' criminal history. Essentially, he didn't mail a form to the state police indicating that he was on this registry, and he got a two-year concurrent sentence to another sentence he was already serving. And when we look at Mr. Gaines' criminal history, that seems to be a pattern where he's serving one sentence and they offer him concurrent time for something else. He accepts it, and pretty substantial. I mean, two years for not mailing back a form. He had another conviction for larceny in the sixth degree, which was based on his shoplifting from Walmart of a $35 cell phone charger that he got 60 days for, which resulted in two criminal history points. And so his criminal history, the conduct itself, was not nearly as serious as the score would suggest. When we compare that to his co-defendants, most of whom were in Category 1 or Category 2, what it appears to show is that Mr. Gaines wasn't as good at avoiding detection as compared to his co-defendants. Andrea Kirkland, for example, who was in Category 1, admitted as part of his plea that he was responsible for three separate shootings. He received a sentence of 210 months, which was only 20 months more than Mr. Gaines. Deomi Blackwell received a sentence of 180 months, 10 months less than Mr. Gaines, despite admitting to have been involved in two shootings. Mr. Gaines' only involvement was the courthouse shooting, and as described, it was in the lookout vehicle, not as a driver, not as a shooter, and he didn't go into the courthouse. And then another co-defendant, Jaquan Benegin, received a sentence of 97 months, about half of what Mr. Gaines received despite having admitted being involved in two shootings. I see my time is up. I'll save the remainder for rebuttal. Thank you, counsel. We'll hear from the governor. Thank you. Good morning. My name is Jocelyn Courtney-Coxanes, and I represent the United States of America on this appeal. When Asante Gaines pled guilty to racketeering conspiracy as part of a dangerous Bridgeport street gang from 2014 to 2021 and aided and abetted the attempted murders of four people on the steps of a Bridgeport state courthouse on Monday afternoon, leaving one of those people permanently paralyzed and others severely injured, the district court sentence of 190 months, which, as your honor pointed out, was 170 months below the guideline sentence in this case, was eminently reasonable. And as defense counsel has recognized, the district court considered all the arguments raised, and on review, he appears to be asking only that this court, as Judge Park pointed out, reweigh the factors that the court already evaluated to come to a different number, and that is not the role of this court on a substantive reasonableness challenge. There's nothing about this sentence that's shockingly high, that's not within the range of permissible decisions, or anything about it that should be overturned. So to turn to the points that were raised by defense counsel with regards to Mr. Gaines' role in defense. First, a defense counsel persists in a different interpretation of the series of text messages than Judge Arterton found, but Judge Arterton had evaluated this case, had sat through all the other defendant sentencing, had heard all of the arguments, and as opposed to finding that Mr. Gaines was telling the brother of the victim to calm down, she interpreted his statement in that when he also said, I'm here for you, or I'm here for you, as being Mr. Gaines was going to take care of it. And regardless, the number of messages after that fax where Mr. Gaines, on a bracelet, not supposed to be in Bridgeport, is first at the Green Homes complex in Bridgeport, and then coordinating with the other defendants to carry out this shooting, and then going with them afterwards to burn the car, shows that he had an integral role in this offense, and the district court was aware that he wasn't a shooter. Beyond that, Mr. Gaines was sentenced for not only the attempted murders of these four individuals on January 27th, but his role in the Green Home Boys gang from 2014 to 2021. And his role in that was not a minor role. So the district court adequately accounted for his role in sentencing. With regards to Mr. Gaines' criminal history category, he had 21 criminal history points. It's true that he didn't have a second-degree robbery conviction like Lahim Jones, one of his co-defendants, but the district court recognized that he had a history of offending, going to prison, getting out, of disregarding the law, of violating probation, and he did all of this having gotten out from prison in July of 2019 and on a bracelet when he wasn't even supposed to be in Bridgeport. So he had what the district court recognized to be a high risk of recidivism, which was also reflected in having accumulated that many criminal history points at that age. With regards to his upbringing, the district court considered his upbringing. If you go to the record at page 151, she commented on what a tragedy this was, and that was part of the variance downwards of 170 months, almost half of what the guideline sentence was in this case. And then finally, with the disparities with regards to his co-defendants, again, the district court, Mr. Gaines was the last one sentenced. The district court was very familiar with this case. Andrea Kirkland, for example, had no criminal history score. He had not gotten into trouble. He hadn't gone to jail. He hadn't come out like Mr. Gaines, and he got a higher sentence. Similarly, Deomi Blackwell had no criminal history. That's why he got 10 months below. Comparing himself to Laheem Jones, Laheem Jones did have a more serious criminal history in the sense of he had, for example, a second-degree robbery, but he had also spent seven years of the conspiracy in jail. And that's why the district court was in the position to judge all of that. And under this court's precedent, as I think we said in our brief with the United States, if you will, there's not even a mandatory requirement that the district court consider each other co-defendant in the case, but the district court did do that here. And so we're left with a sentence of a district court judge who weighed everything that the defendant wanted her to weigh, who considered everything the defendant wanted her to consider and weighed those considerations, those mitigating factors, against the aggravating factors. And the result was a sentence that was a reasonable sentence and should be affirmed by this court. And unless this court has any further questions, I'll rest on my papers. Thank you. Thank you, counsel. We'll hear rebuttal. I finished earlier by discussing some of the comparative sentences that the co-defendants received. The best comparison is Lahim Jones because Mr. Gaines and Mr. Jones had similar criminal histories. Jones was Category 3 or 4, depending on how you calculated it. Jones had three violent felony convictions and one felony conviction for sale of drugs. He had a robbery conviction that the government mentioned. He also had received concurrent eight-year sentences for two convictions of attempted assault in the first degree. So here he was with technically a lower criminal history just based on counting the convictions, but when you look at his conduct, it involved three violent felonies, two attempted assaults, and one robbery and one sale of narcotics conviction. He and Mr. Gaines received the exact same sentence of 190 months. Jones, the district court determined, also minimized his role in the offense at the sentencing, and the court also determined that Jones, unlike Mr. Gaines, was a founding member of GHB and had been a member since 2012. So in comparison to all the other sentences, placing them side by side with Mr. Gaines, the sentence that Mr. Gaines received was substantively unreasonable, and Jones' sentence is the best comparison to that. Just to pick up on one point the government made about the I'm here for you comment, the quote was if you want to talk, I'm here for you. It wasn't I'm here for you, I'll go shoot somebody. It was explicitly said that if you want to talk, meaning you're mourning your brother, I'm here for you. That was the statement that Mr. Gaines made. I have a few seconds left just to touch on the character that was described by multiple people, including a letter from the Wyatt Detention Facility where Mr. Gaines was described as respectful to staff and peers, and he was also described by others as caring, respectful, intelligent, and sincere. Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.